RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0295p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

CHARLES COURIE, et al.,
　　　　　　　*Plaintiffs-Appellants,*

　　　*v.*

ALCOA WHEEL & FORGED PRODUCTS, et al.,
　　　　　　　*Defendants-Appellees.*

No. 07-4440

—————————————

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 06-02117—Lesley Brooks Wells, District Judge.

Argued: April 28, 2009

Decided and Filed: August 18, 2009

Before: MARTIN, SUHRHEINRICH, and GIBBONS, Circuit Judges.

—————————————

**COUNSEL**

**ARGUED:** Scot Allen Lewis Hinshaw, HUNTON & WILLIAMS LLP, Washington, D.C., Joyce Goldstein, GOLDSTEIN GRAGEL LLC, Cleveland, Ohio, for Appellees. **ON BRIEF:** Scot Allen Lewis Hinshaw, HUNTON & WILLIAMS LLP, Washington, D.C., Joyce Goldstein, Gina L. Fraternali, GOLDSTEIN GRAGEL LLC, Cleveland, Ohio, for Appellees.

—————————————

**OPINION**

—————————————

BOYCE F. MARTIN, JR., Circuit Judge. Charles Courie sued his employer, ALCOA and Alcoa Wheel & Forged Products (collectively, "Alcoa"), and his union, the United Auto Workers Local 1050 and the international UAW (along with certain employees of the union and employer), alleging that they discriminated against him by settling his union

1

grievance via an agreement that branded him a racist. The district court disagreed and dismissed all of his federal and state claims. For the reasons stated below, we affirm.

I.

In 2003, someone left an inappropriate note on an Alcoa cafeteria table where African-American employees tended to sit. In its investigation into the incident, an employee of Alcoa's human resources department spoke with Courie, who denied leaving the note. Recalling who he did sit with at lunch that day, Courie, unable to recall the employee's name, said he sat with "Jew Boy," among others. Alcoa later sent Courie a warning stating that it considered that term "racially offensive." In response, Courie filed a grievance with his union, stating it was not racist and that other Alcoa employees of various races had also used the term. Courie also claimed the warning constituted a breach of the collective bargaining agreement because Alcoa reprimanded him only. A union grievance hearing was held but Alcoa maintained that its actions were proper, and the union did not push for arbitration. Courie then sued Alcoa and the human resources employee who sent the warning in state court, alleging discrimination, intentional infliction of emotional distress, and interference with business relations. Courie lost, first at the trial court and then on appeal. The appeals court reasoned that Alcoa could lawfully single Courie out because only he had used "Jew Boy" in front of management. *Courie v. Alcoa*, 832 N.E.2d 1230, 1230 (Ohio Ct. App. 2005).

While his state suit was pending, Courie discovered that Alcoa and his union had considered settling his original dispute—he alleges that they reached a firm settlement, but the record contains only a "settlement proposal," which reads:

> Since over a year has elapsed since the incident, the Company is willing to remove the discipline from Mr. Courie's record. This offer is made with the understanding that the Company's response to his inappropriate remarks was correct and in accordance with its responsibility to maintain a proper work environment for all employees, and that Mr. Courie understands and acknowledges his remarks were inappropriate.

J.A. 32-33. With this "settlement agreement" in hand, Courie filed suit in federal court, naming Alcoa, the UAW, Jeff Judson and Roy King (union employees), and Ann Isaac (Alcoa employee) as defendants. He alleged that: (1) Alcoa breached the anti-discrimination

provisions of Article XV of the collective bargaining agreement and the union breached its duty of fair representation to him when they entered into the settlement—together a "hybrid action" under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185; (2) each of the defendants discriminated against him in violation of Ohio Rev. Code § 4112.02 by entering into the settlement; (3) defendant employees defamed him and (4) committed the tort of intentional infliction of emotional distress when they entered into the settlement without his consent and sent the letter to him. In addition, Courie's wife, Cindy, alleges loss of consortium.

The defendants filed motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The magistrate denied the Couries' motion for leave to amend their complaint, instead giving them the benefit of any amendment—which would have been to clarify their claim to avoid the *res judicata* effect of their state claims. *See A-1 Nursing Care of Cleveland, Inc. v. Florence Nightingale Nursing, Inc.*, 647 N.E.2d 222, 224 (Ohio 1994). On the magistrate's recommendation, the district court granted the defendants' motions to dismiss. The Couries appeal.

II.

On appeal, we review de novo a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 451-52 (6th Cir. 2003). The Supreme Court recently raised the bar for pleading requirements beyond the old "no-set-of-facts" standard of *Conley v. Gibson*, 355 U.S. 41 (1957), that had prevailed for the last few decades. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Conley* itself had reflected the change away from "code pleading"[1] to "notice pleading," and the standard it announced was designed to screen out only those cases that patently had no theoretical hope of success. 355 U.S. at 45-46 ("In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."); *see also Iqbal*, 129 S. Ct. at 1959 (Souter,

---

[1]*See generally* Roscoe Pound, *Review of Clark on Code Pleading*, 38 YALE L. J. 127 (1928).

J., dissenting) (observing that "[t]he sole exception" to the *Conley* rule was for "allegations that [were] sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel").

The Court has now explained, however, that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949. Indeed, while this new *Iqbal/Twombley* standard screens out the "little green men" cases just as *Conley* did, it is designed to also screen out cases that, while not utterly impossible, are "implausible." *See* Robert G. Bone, Twombly*, Pleading Rules, and the Regulation of Court Access*, 94 IOWA L. REV. 873, 887-90 (2009). Exactly how implausible is "implausible" remains to be seen, as such a malleable standard will have to be worked out in practice.

The Couries' legal arguments rest wholly upon the existence of a "settlement agreement" that possibly does not exist: all we have is an unsigned proposal from the UAW to Alcoa. Yet a complaint need only "contain sufficient factual matter" to be "plausible," *Iqbal*, 129 S. Ct. at 1949, and we cannot dismiss for factual implausibility "even if it [would] strike[] a savvy judge that . . . recovery is very remote and unlikely," *Twombly*, 550 U.S. at 556 (internal quotation marks and citation omitted); *see also Iqbal*, 129 S. Ct. at 1950 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Here, Courie has alleged that this settlement agreement exists and has provided an unsigned settlement proposal as an exhibit to his complaint in support. For purposes of his motion to dismiss, that is "sufficient" detail for us to assume that the agreement existed. But, as explained below, even assuming the agreement exists, Courie's complaint does not state claims upon which relief may be granted.

III.

Courie contends that the settlement agreement between the UAW and Alcoa simultaneously amounted to both a breach of the union's duty of fair representation and a breach by Alcoa of the collective bargaining agreement—together, a so-called "hybrid § 301" claim. To further § 301 of the Labor Management Relations Act's purpose of encouraging the arbitration of labor disputes, the Supreme Court generally bars these suits from being brought directly against employers until relief is first sought under the labor contract. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653 (1965). Thus, employees must go to their unions before courts, and so the grievance and arbitration procedure can only be invoked by the union: the worker must persuade his union to prosecute his grievance and to submit it to arbitration. Federal courts may grant the employee relief against both his employer and his union for the employer's violation only if he can also show that the union breached its duty of fair representation in prosecuting his grievance. *White v. Detroit Edison Co.*, 472 F.3d 420, 425 (6th Cir. 2006); *DelCostello v. Teamsters*, 462 U.S. 151, 163-65 (1983). Liability attaches to neither employer nor union unless fault can be proved as to both. *Roeder v. American Postal Workers Union*, 180 F.3d 733, 737 (6th Cir. 1999).[2]

### A.    Union duty of fair representation

When a union is selected as exclusive representative of the employees in a bargaining unit, it has a duty under § 9(a) of the National Labor Relations Act to fairly represent them. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). A union breaches this duty when its conduct toward an employee is "arbitrary, discriminatory, or in bad faith." *Air Line Pilots v. O'Neill*, 499 U.S. 65, 67 (1991). A union's action is "arbitrary" "only if

---

[2]The defendants also assert that Courie failed to bring his hybrid § 301 within the necessary six-month statute of limitations, *DelCostello*, 462 U.S. at 171, which begins to run when the claimant discovers or should have discovered the violation, *McCreedy v. Local Union No. 971, UAW,* 809 F.2d 1232, 1236 (6th Cir. 1987). The letter signifying the settlement agreement is dated July 12, 2004, and he did not file this suit until September 2006. But he asserts that the defendants capriciously concealed the agreement until early 2006. The defendants, although they reassert this issue on appeal, did not want to engage in discovery to determine when, in fact, Courie discovered the letter, or whether their actions would support an argument by Courie of equitable tolling, so we, like the district court, assume that Courie could not have reasonable discovered the existence of the settlement until March 2006—within the six-month statute of limitations.

[such conduct] can be fairly characterized as so far outside a 'wide range of reasonableness' that it is wholly 'irrational' or 'arbitrary.'" *Id.* at 78 (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)); *see also Sipes*, 386 U.S. at 192 ("[A] union does not breach its duty of fair representation . . . merely because it settled the grievance short of arbitration."). And a union does not breach the duty of fair representation by failing to consult with a worker before settling his grievance. *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1975).

Courie argues that the union racially discriminated against him by entering into the settlement agreement, contending that the agreement's language amounted to an admission that he was a racist. The agreement stated that "Mr. Courie understands and acknowledges that his remarks were inappropriate." We disagree that this was improper. It was not "arbitrary, discriminatory, or in bad faith" for the union to negotiate for a concession stating that Courie appreciated that his remark was inappropriate—indeed, a state court had concluded that the original reprimand itself was entirely permissible, and it is difficult to surmise in what way this settlement exceeds what the warning itself already had done. (The state court went so far as to state that Alcoa had a "legal obligation to warn [Courie] that calling a co-worker a racially offensive name would not be tolerated." *Courie*, 832 N.E.2d at 1237.) There was therefore nothing improper about the union negotiating an agreement whereby Courie admitted that he should not have called his coworker "Jew Boy" in exchange for the warning to be *stricken from his record*. Bargaining for such an exchange was reasonable union action.

## B.     Alcoa's alleged breach of the collective bargaining agreement

Having failed on the first half of his hybrid claim, Courie cannot maintain it, as both halves are essential. But it is evident that Alcoa did not violate the collective bargaining agreement by entering into the settlement. Article XV of the collective bargaining agreement prohibits the company (and union) from "discriminat[ing] against any employee on account of race, color, national origin, age, sex, religion, Vietnam-era veteran, or against any disabled employee." As with his parallel claim against the UAW, Courie cannot prove discrimination because he cannot prove that he was singled out for

discriminatory treatment considering that he was the only one who had been warned, and we already know, per his state claim, that the warning itself was permissible. As a result he cannot point to any similarly situated employee who had been treated better, and settling his grievance, save something outrageous, was thus permissible. The district court properly found that Courie has not stated a claim to relief under § 301 that is plausible on its face.

IV.

In light of our conclusion that the settlement agreement itself was not discriminatory, Courie's remaining arguments cannot prevail.

### A.     State law discrimination

Courie alleges that UAW defendants King and Judson discriminated against him by failing to take his grievance to arbitration and by settling it, and that Alcoa defendant Isaac discriminated against him by settling his grievance. Ohio law makes it unlawful for "any employer, because of the race, color, . . . or ancestry of any persons . . . to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." OHIO REV. CODE § 4112.02(A). Similarly, Ohio law also prohibits "any labor organization" from "[d]iscriminat[ing] against, limit[ing] the employment opportunities of, or otherwise adversely affect[ing] the employment status, wages, hours, or employment conditions of any person as an employee because of race, color, . . . or ancestry." OHIO REV. CODE § 4112.02(C)(2).

To establish a prima facie case of reverse discrimination under § 4112.02, Ohio law requires the plaintiff to show: "(1) background circumstances supporting the inference that plaintiff's employer was the unusual employer who discriminated against non-minority employees, (2) that plaintiff was discharged (or that the employer took an action adverse to the plaintiff's employment), (3) that plaintiff was qualified for the position, and (4) that plaintiff was treated disparately from similarly situated minority employees." *Courie*, 832 N.E.2d at 1235; *see also Genaro v. Cent. Transp.*, 703 N.E.2d

782, 784 (Ohio 1999) ("The Ohio Supreme Court has ruled that federal case law interpreting and applying Title VII is generally applicable [to § 4112.02 claims]."). Here, again, Courie is a class of one and thus cannot point to any "similarly-situated minority employees" who were warned and yet were not subject to the allegedly racist settlement agreement. Further, the settlement agreement does not appear to be an "adverse action": it appears to be the opposite of adverse, actually, considering that it proposed to remove the traces of the original written warning from his record. And, finally, Courie's argument that the union should have pursued his claim for arbitration is an impermissible attempt to bootstrap the federal duty of fair representation into state law, despite his having already lost on that claim. Courie therefore cannot maintain a § 4112.02 claim against the UAW or Alcoa.

### B.    Defamation or fraud

Below, Courie contended that defendants Isaac, Judson, and King defamed him. On appeal, he states that he is reasserting his defamation claim—including listing the legal standard for it—but argues only fraud in his appellate briefs. This is particularly problematic because his lawyer below (not his same counsel on appeal) explicitly stated that Courie was *not* asserting a claim for fraud. Thus, his fraud claim is waived (as it was expressly waived below), as is his defamation claim (for failure to argue and brief it on appeal). *See J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1489 (6th Cir. 1991).

### C.    Intentional infliction of emotional distress

Courie next alleges that defendants Isaac, Judson, and King purposely sought to inflict emotional distress on him by entering into the settlement agreement. He claims they "knew or should have known" that they would cause him severe emotional distress by entering into the agreement and including in it an admission that his "Jew Boy" comment was wrong, and, further, that such conduct was "so extreme and outrageous as to go beyond all possible bounds of decency" and would therefore be "utterly intolerable in a civilized community." *Ashcroft v. Mt. Sinai Med. Ctr.*, 588 N.E.2d 280,

284 (Ohio Ct. App. 1990); *Miller v. Premier Indus. Corp.*, 737 N.E.2d 594, 603 (Ohio Ct. App. 2000).

Given that we have already concluded that entering into the settlement agreement was not discriminatory, it is unsurprising that we also conclude that it was neither an "outrageous" nor "extreme" act, especially considering the narrow way Ohio defines its tort. *See Baab v. AMR Servs. Corp.*, 811 F. Supp. 1246, 1269 (N.D. Ohio 1993) ("[T]o say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an understatement."). Courie therefore cannot maintain his suit for intentional infliction of emotional distress.

### D.    Loss of consortium

Courie's wife, Cindy, asserts a claim for loss of consortium. A spouse may sue for loss of consortium when the defendant either intentionally or negligently injures her spouse and thereby deprives her of her husband's society, services, sexual relations, and conjugal affection, which includes companionship, comfort, love, and solace. *Bowen v. Kil-Kare, Inc.*, 585 N.E.2d 384, 391 (Ohio 1992). Yet a "claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury." *Id.* at 392. Thus, because we have rejected all of Mr. Courie's other tort claims, we must also reject his wife's derivative claim for loss of consortium.

### E.    Motion for leave to amend

Finally, Courie argues that the district court improperly denied his motion for leave to amend his complaint. Although such motions are commonly granted, a motion to amend a complaint should nevertheless "be denied if the amendment . . . would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). The district court ruled that any amendment would be futile because the court gave Courie the benefit of all his proposed "amendments" and "clarifications" anyway—specifically, his narrowed focus on the alleged settlement agreement lest his case fall into *res judicata* land. Indeed, we too have given Courie the benefit of all the "clarifications" he asserts he would have

argued (and one cannot argue for reversal for being denied leave to amend without being able to identify what else he would have added to his complaint), and so the district court did not abuse its discretion when it denied Courie's motion for leave to amend. *See Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 771-72 (6th Cir. 2006).

V.

For the above reasons, we AFFIRM the dismissal of the Couries' claims.