**Edwin A. RAETH, an individual, on his own behalf and on behalf of all others similarly situated, Plaintiff,**

v.

**NATIONAL CITY BANK, Defendant.**

**No.  2:09–cv–02812–JPM–tmp.**

United States District Court,
W.D. Tennessee,
Western Division.

Nov. 12, 2010.

Dale H. Tuttle, Robert A. Cox, Glassman Jeter Edward & Wade, Memphis, TN, Evan Matthew Meyers, Edelson McGuire, LLC, Chicago, IL, for Plaintiff.

Glen G. Reid, Jr., Wyatt Tarrant & Combs, Memphis, TN, Darryl J. May, Mark J. Furletti, Ballard Spahr LLP, Philadelphia, PA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

JON P. McCALLA, Chief Judge.

Before the Court is Defendant National City Bank's ("National City") Motion to Dismiss Plaintiff's Complaint (Docket Entry ("D.E.") 6), filed March 5, 2010. Plaintiff responded in opposition on April 5, 2010. (D.E. 16.) For the following reasons, National City's motion to dismiss is GRANTED.

### I. Background

This putative class action arises out of a dispute over National City's suspension of Plaintiff's home equity line of credit ("HELOC"). In February 2005, Plaintiff obtained a $35,000 HELOC from National City, which was secured by Plaintiff's home in Germantown, Tennessee. (Compl. (D.E. 1) ¶ 8.) At the time the loan was originated, Plaintiff's home was appraised at $354,800. (*Id.* ¶ 17.) Plaintiff's primary mortgage on the home was $283,800, leaving a $36,000 equity cushion. (*Id.*)

In April 2009, Plaintiff received a letter from National City stating that his HELOC had been suspended. (*Id.* ¶ 14.) The letter explained that National City had used an Automated Valuation Model ("AVM") to determine that Plaintiff's home had declined in value to $332,100. (*Id.* ¶ 18.)

Plaintiff contacted National City and requested that his HELOC be reinstated. (*Id.* ¶ 16.) Plaintiff explained that the purported decline in his home's value was "almost entirely offset by an increase in available equity in his property due to a paydown of his first mortgage balance." (*Id.* ¶ 15.) Despite Plaintiff's request, Na-

tional City did not reinstate Plaintiff's HELOC. (*Id.* ¶ 19.)

On December 14, 2009, Plaintiff filed the instant suit. Plaintiff asserts that National City violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and its implementing regulation, Regulation Z, 12 C.F.R. part 226, when it suspended his HELOC and suspended or reduced the HELOCS of the putative class. Plaintiff also asserts state-law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. (*Id.* at 10–21.)

## II. Standard of Review

Under *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), "a civil complaint only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.,* 577 F.3d 625, 630 (6th Cir.2009) (*quoting Iqbal,* 129 S.Ct. at 1949). The Court must "construe the complaint in the light most favorable to the plaintiff, accept all its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *In re Travel Agent Comm'n Antitrust Litig.,* 583 F.3d 896, 902–03 (6th Cir. 2009) (citation omitted). The Court "need not accept as true legal conclusions or unwarranted factual inferences ... and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* at 903 (citations and quotation marks omitted).

1. Plaintiff has abandoned his claims regarding National City's alleged insufficient or improper notice of suspension. (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") (D.E. 16) 4 n. 1.) The Court notes that the preferred method for abandoning

## III. Analysis

### a. Plaintiff's Claims

Plaintiff's complaint appears to state the following claims in five counts:

### i. Count I: Claims for Declaratory Relief

1. A claim for declaratory relief based on National City's alleged violation of TILA and Regulation Z by suspending Plaintiff's HELOC without first determining Plaintiff's present equity in his home.

2. A claim for declaratory relief based on National City's alleged violation of TILA and Regulation Z by suspending Plaintiff's HELOC in the absence of any significant decline in the value of Plaintiff's home.

3. A claim for declaratory relief based on National City's alleged violation of TILA and Regulation Z by giving deficient notice in suspending Plaintiff's HELOC.[1]

4. A claim for declaratory relief based on National City's alleged violation of TILA and Regulation Z by requiring Plaintiff to pay upfront for an appraisal as part of National City's appeals process.

### ii. Count II: Other Claims Under TILA and Regulation Z

5. A claim that National City violated TILA and Regulation Z by lacking a sufficient factual basis for suspending Plaintiff's HELOC.

fewer than all claims against a defendant is to amend the complaint under Rule 15. *See* 9 *Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure* § 2362 (3d ed. 2008); *see also Mgmt. Investors v. United Mine Workers of Am.,* 610 F.2d 384, 394 (6th Cir.1979).

6. A claim that National City violated TILA and Regulation Z by suspending Plaintiff's HELOC without first determining Plaintiff's present equity in his home.

7. A claim that National City violated TILA and Regulation Z by requiring Plaintiff to pay upfront for an appraisal as part of National City's appeals process.

### iii. Count III: Breach of Contract Claims

8. A claim that National City breached the HELOC agreement by suspending Plaintiff's HELOC in the absence of any significant decline in the value of Plaintiff's home.

9. A claim that National City breached the HELOC agreement by suspending Plaintiff's HELOC without a sound factual basis for the decision.

10. A claim that National City breached the HELOC agreement by suspending Plaintiff's HELOC without first determining Plaintiff's present equity in his home.

### iv. Count IV: Breach of the Implied Covenant of Good Faith and Fair Dealing Claims

11. A claim that National City breached the implied covenant of good faith and fair dealing by using its discretion to suspend Plaintiff's HELOC in the absence of any significant decline in the value of Plaintiff's home.

12. A claim that National City breached the implied covenant of good faith

13. A claim that National City breached the implied covenant of good faith and fair dealing by requiring Plaintiff to pay upfront for an appraisal as part of National City's appeals process.

14. A claim that National City breached the implied covenant of good faith and fair dealing by failing to disclose certain information used in determining whether to suspend Plaintiff's HELOC.

### v. Count V: Unjust Enrichment Claim

15. An unjust enrichment claim based on National City's suspension of Plaintiff's HELOC.

### b. Challenged Claims

National City asks the Court to dismiss all of Plaintiff's claims with prejudice. (Mem. of Law in Supp. of Def.'s Mot. to Dismiss Pl.'s Compl. ("Def.'s Mem.") (D.E. 6–1) 20.)

### c. Analysis of Plaintiff's Claims

The resolution of National City's motion to dismiss largely depends on whether Plaintiff's reading of TILA and Regulation Z is correct. Specifically, the Court must determine whether National City's conduct falls within a "safe harbor" contained in the Official Staff Commentary ("Official Commentary") to Regulation Z.[2]

---

**2.** The Supreme Court has held that "deference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z. Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation [Z] should be dis-

positive for several reasons." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980); *see also Hickman v. Wells Fargo Bank N.A.*, 683 F.Supp.2d 779, 785 n. 1 (N.D.Ill.2010) ("The Official Commentary to TILA and Regulation

TILA prohibits a creditor from unilaterally changing any material term of a HELOC. 15 U.S.C. § 1647(c)(1). The statute contains an exception allowing a creditor to suspend the account or lower the credit limit during periods "in which the value of the consumer's principal dwelling which secures any outstanding balance is significantly less than the original appraisal value of the dwelling." *Id.* § 1647(c)(2)(B). The regulatory exception is virtually identical. *See* 12 C.F.R. § 226.5b(f)(3)(vi)(A) (noting that a "creditor may ... reduce the credit limit ... during any period in which [t]he value of the dwelling that secures the plan declines significantly below the dwelling's appraised value for purposes of the plan").

Neither the statute nor Regulation Z defines when a decline is "significant." The Official Commentary purports to define this term, but it explains only that "[w]hat constitutes a significant decline ... will vary according to individual circumstances." 12 C.F.R. part 226, Supp. I, § 5b(f)(3)(vi)–6. The Official Commentary contains a safe-harbor provision that is more precise: "If the value of the dwelling declines such that the initial difference between the credit limit and the available equity (based on the property's appraised value for purposes of the plan) is reduced by fifty percent, this constitutes a significant decline" for purposes of Regulation Z. *Id.* The safe harbor is illustrated by the following example:

> [A]ssume that a house with a first mortgage of $50,000 is appraised at $100,000 and the credit limit is $30,000. The difference between the credit limit and the available equity is $20,000, half of which is $10,000. The creditor could prohibit further advances or reduce the credit limit if the value of the property declines from $100,000 to $90,000.
>
> *Id.*

The first question before the Court is whether, taking all the factual assertions in the complaint as true, Plaintiff's home experienced a "significant" decline in value as defined in the safe-harbor provision. National City argues that the safe-harbor provision requires the creditor to consider just four pieces of information: (1) the value of the home when the HELOC was originated; (2) the amount of liens against the home when the HELOC was originated; (3) the HELOC's credit limit; and (4) the present value of the home. (Def.'s Mem. 6.) Plaintiff counters that the creditor must also consider the present equity in the home. (Pl.'s Opp'n 9.)

The text of TILA and Regulation Z suggest that the present equity level of the home is irrelevant to the analysis of whether there has been a "significant" decline in value. Neither TILA nor Regulation Z makes any reference to present equity. Both rules suggest that the sole operative variable is the value of the home.

The safe harbor introduces the concept of equity into the significant-decline equation, but the extent of equity's role in the equation is unclear. The level of equity at origination is essential to the safe harbor because it sets the baseline by which the decline will be judged. Moreover, the value of the home declines in the example provided by the Official Commentary. But the example makes no reference to the present level of equity—it could be unchanged or it could be irrelevant.

The Court finds that the better reading of the safe harbor is that the present level of equity is irrelevant to whether the

Z is controlling in this context.") (*citing Hamm v. Ameriquest Mortgage Co.,* 506 F.3d 525, 528 (7th Cir.2007)).

home's value has declined significantly. As noted above, the statute and the regulation suggest that the sole operative variable is the value of the home. The safe harbor's use of present equity is ambiguous at best. It seems unlikely that the Official Commentary would depart from both the statutory language and the regulatory text to introduce another operative variable without being explicit in doing so. *See Ford Motor Credit Co.*, 444 U.S. at 565, 100 S.Ct. 790 ("[J]udges are not accredited to supersede Congress or the appropriate agency by embellishing upon the regulatory scheme. Accordingly, caution must temper judicial creativity in the face of legislative or regulatory silence.").

Plaintiff offers a series of policy arguments to support his reading of the safe-harbor provision. Plaintiff contends that there is no increased risk to the creditor if the borrower has paid off all or part of a first mortgage. (Pl.'s Opp'n 8.) Plaintiff argues that the Court's reading of the safe-harbor provision would discourage borrowers from paying down their mortgages sooner, but Plaintiff offers no evidence that Congress intended to encourage borrowers to pay down their mortgages quickly. (*Id.*) Plaintiff also suggests that the purpose of TILA and Regulation Z is to prevent unfair lending practices, but this argument merely assumes Plaintiff's conclusion, namely, that National City's reading of the safe-harbor provision is unfair. (*Id.* at 9.) Plaintiff further contends that the safe-harbor provision should be construed to benefit consumers, but it is not necessarily true that Plaintiff's reading of the safe harbor would have that effect. (*Id.*) For example, making it more difficult for creditors to protect themselves against perceived risk could harm consumers if loans were subsequently made available to consumers only on more onerous terms. Finally, Plaintiff argues that creditors should not be able to ignore present equity levels when such information is presented to them, but the Court declines to impose a requirement on creditors where Congress and the Federal Reserve Board have not already done so.

There exists a broader problem with Plaintiff's policy arguments. Plaintiff's arguments rest on contestable propositions of national economic policy. This Court is not the proper forum for resolving such debates. *See Ford Motor Credit Co.*, 444 U.S. at 565, 100 S.Ct. 790.

■ The Court finds that the safe-harbor provision does not require a creditor to consider the present level of equity in a borrower's home. The Court next addresses what effect this finding has on Plaintiff's claims.

### i. Claims that National City Violated TILA and Regulation Z by Suspending Plaintiff's HELOC Without First Determining the Present Level of Equity in Plaintiff's Home

As noted above, the Court finds that the safe-harbor provision did not require National City to consider the present level of equity in Plaintiff's home before finding that his home experienced a significant decline in value. The Court declines to read such a requirement into TILA or Regulation Z. Accordingly, Plaintiff's claim that National City violated TILA and Regulation Z by suspending Plaintiff's HELOC without first determining Plaintiff's present equity in his home is DISMISSED WITH PREJUDICE.[3] Because Plaintiff has not stated a viable claim, Plaintiff's request for declaratory relief based on the

---

**3.** This claim corresponds to Count II, Claim 6 on page 4 of this Order, *supra.*

same alleged violation of TILA and Regulation Z also must fail.[4]

### ii. Claims that National City Violated TILA and Regulation Z by Requiring Plaintiff to Pay Upfront for an Appraisal

■ The HELOC suspension notice received by Plaintiff indicates that if Plaintiff wished to challenge the valuation of his home, he would have to pay for an appraisal himself.[5] (Compl. Ex. A, Aug. 21, 2009 letter from National City Bank to Erwin and Ericka Raeth 2.) Plaintiff contends that this is unlawful, and that National City should be required to bear the cost of an appraisal. (Pl.'s Opp'n 10.)

The Official Commentary requires a creditor to reinstate a suspended HELOC when the condition leading to the suspension ceases to exist. 12 C.F.R. part 226, Supp. I, § 5b(f)(3)(vi)–2. A creditor may either continually monitor the condition, or it may require the borrower to seek reinstatement. *Id.* § 5b(f)(3)(vi)–4. "Once the consumer requests reinstatement, the creditor must promptly investigate to determine whether the condition allowing the freeze continues to exist. Under this alternative, the creditor has a duty to investigate only upon the consumer's request." *Id.*

The Official Commentary explains that "[i]f not prohibited by state law, a creditor may collect only bona fide and reasonable appraisal . . . fees if such fees are actually incurred in investigating whether the condition permitting the freeze [i.e., suspension] continues to exist." *Id.*

§ 5b(f)(3)(vi)–3. Plaintiff reads this provision as requiring a creditor to bear the upfront costs of an appraisal. (Pl.'s Opp'n 10.) National City argues that the provision only limits the extent to which a creditor may seek reimbursement if the creditor chooses to bear the upfront appraisal costs. (Def.'s Mem. 12.)

The text of the provision demonstrates that National City's reading is correct. The Official Commentary requires a creditor to investigate the condition underlying the suspension upon the borrower's request, but the Commentary does not prescribe the form that such an investigation must take. The provision does not require a creditor to incur appraisal fees. Instead, it governs the procedure by which a creditor that incurs appraisal fees may seek reimbursement. Put another way, if a creditor orders an appraisal, then that creditor may seek reimbursement only for its actual costs. *See* 12 C.F.R. part 226, Supp. I, § 5b(f)(3)(vi)–2 (noting that "a creditor may collect only bona fide and reasonable appraisal . . . fees if such fees are actually incurred"); *see also Hickman,* 683 F.Supp.2d at 789 ("[N]either the statute, regulations nor Official Commentary contain any provisions prohibiting [creditors] from shifting the burden of obtaining and paying upfront for a property appraisal to borrowers.") (internal quotations omitted). National City's decision to shift the burden of paying upfront for an appraisal to Plaintiff does not amount to "demand[ing] an upfront fee" that the

---

**4.** This claim corresponds to Count I, Claim 1 on page 3 of this Order, *supra.*

**5.** The Court notes that it may consider the exhibit attached to Plaintiff's complaint. *See Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir.2001) ("In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, al-

though . . . exhibits attached to the complaint . . . may be taken into account.") (internal quotations omitted); *see also Weiner v. Klais & Co.,* 108 F.3d 86, 89 (6th Cir.1997) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim.").

creditor has not actually incurred. (Pl.'s Opp'n 10.)

Plaintiff argues that requiring borrowers to pay upfront for appraisals may discourage them from seeking reinstatement. (Pl.'s Opp'n 11.) This may be true, but requiring borrowers to pay upfront for appraisals may also deter frivolous requests for reinstatement. Plaintiff has cited no authority suggesting that Congress intended to resolve this putative problem. The Court declines to choose between competing policies. *See Ford Motor Credit Co.*, 444 U.S. at 565, 100 S.Ct. 790. Accordingly, Plaintiff's claim that National City violated TILA and Regulation Z by requiring Plaintiff to pay upfront for an appraisal as part of National City's appeals process is DISMISSED WITH PREJUDICE.[6] Because Plaintiff has not stated a viable claim, Plaintiff's request for declaratory relief based on the same alleged violation of TILA and Regulation Z also must fail.[7]

### iii. Claim that National City Violated TILA and Regulation Z by Lacking a Sufficient Factual Basis for Suspending Plaintiff's HELOC

Plaintiff alleges that National City "knowingly lacked a sound factual basis for concluding that the propert[y] had declined in value significantly enough to support reducing the credit limits...." (Compl. ¶ 48.) Plaintiff attacks National City's Automated Valuation Model ("AVM") as "dubious automated formulas and algorithms, with unreliable or inaccu-

rate analyses designed to reach a predetermined result." (*Id.* ¶ 4.) Plaintiff fails to cite any provision in TILA or Regulation Z requiring a creditor to employ a particular valuation model. It appears that no such provision exists. Accordingly, Plaintiff's claim that National City violated TILA and Regulation Z by lacking a sufficient factual basis for suspending Plaintiff's HELOC is DISMISSED WITH PREJUDICE.[8] Because Plaintiff has not stated a viable claim, Plaintiff's request for declaratory relief based on a related alleged violation of TILA and Regulation Z also must fail.[9]

### iv. Breach of Contract Claims

The Court notes preliminarily that, pursuant to the choice-of-law provision in the HELOC agreement, Ohio law governs Plaintiff's state-law claims. (Compl. Ex. B, Equity Reserve Agreement—National Home Equity 3) ("[T]his Agreement ... shall be governed by and construed in accordance with ... the laws of Ohio...."). In diversity cases, the Court must apply the conflict of law rules of the forum state. *Johnson v. Ventra Group, Inc.*, 191 F.3d 732, 738 (6th Cir. 1999). Under Tennessee law, a choice-of-law provision is enforceable so long as the chosen state has some connection to the transaction at issue. *See Goodwin Bros. Leasing, Inc. v. H & B, Inc.*, 597 S.W.2d 303, 306 (Tenn.1980) ("[P]arties ordinarily are free to contract that the law of some jurisdiction other than that of the place of

---

**6.** This claim corresponds to Count II, Claim 7 on page 5 of this Order, *supra*.

**7.** This claim corresponds to Count I, Claim 4 on page 4 of this Order, *supra*.

**8.** This claim corresponds to Count II, Claim 5 on page 4 of this Order, *supra*.

**9.** This claim corresponds to Count I, Claim 2 on page 4 of this Order, *supra*. The Court

notes that its finding—that TILA and Regulation Z do not require a creditor to determine the present level of equity in a borrower's home before concluding that there has been a significant decline in the home's value—resolves Plaintiff's claim that National City "violated TILA and Regulation Z by suspending ... [Plaintiff's] HELOC ... in the absence of any 'significant decline' in the value of the subject properties." (Compl. ¶ 35.)

making will govern their relationship."). The relevant connection in this case is that National City is headquartered in Cleveland, Ohio. (Compl. ¶ 9.)

■ Under Ohio law, a breach of contract claim requires proof of the following four elements: (1) the existence of a contract; (2) performance by Plaintiff; (3) breach by Defendant; and (4) damage or loss to Plaintiff. *Doner v. Snapp*, 98 Ohio App.3d 597, 649 N.E.2d 42, 44 (1994).

Plaintiff alleges that National City breached the HELOC agreement by (1) suspending Plaintiff's HELOC in the absence of any significant decline in the value of Plaintiff's home; (2) suspending Plaintiff's HELOC without a sound factual basis for the decision; and (3) suspending Plaintiff's HELOC without first determining Plaintiff's present equity in his home. (Compl. ¶ 58.) National City contends that the HELOC agreement expressly allows National City to suspend the HELOC if the value of Raeth's home declined significantly within the meaning of TILA, Regulation Z, and the safe-harbor provision. (Def.'s Mem. 14–17.) Plaintiff responds that National City "relied on faulty AVMs and that Raeth's home did not decline in value." (Pl.'s Opp'n 14.)

The HELOC agreement permits National City to reduce or suspend Plaintiff's HELOC if "[t]he value of the [d]welling securing [Plaintiff's] Line declines significantly below its present appraised value for purposes of the Credit Line." (Compl. Ex. B, Equity Reserve Agreement—National Home Equity 3.) The HELOC agreement provides that it is to be "governed by and construed in accordance with ... [f]ederal laws and regulations...." (*Id.*)

Plaintiff's breach of contract claims, which essentially reiterate Counts I and II, depend on the premise that National City breached the HELOC agreement by violating TILA and Regulation Z. As discussed above, the Court has determined that the safe-harbor provision does not require National City to consider the present level of equity in Plaintiff's home. *See supra.* The Court has also determined that the use of an AVM to calculate the value of Plaintiff's home does not violate TILA or Regulation Z. *See supra.* Because TILA and Regulation Z permit National City's actions, National City has not breached the HELOC agreement. *See Cook v. Home Depot U.S.A., Inc.*, No. 2:06–cv–00571, 2007 WL 710220, at *3, 2007 U.S. Dist. LEXIS 15679, at *9 (S.D.Ohio Mar. 6, 2007) (dismissing a breach of contract claim under Ohio law because "[p]laintiff fail[ed] to point to a specific contractual provision that ... [defendant] failed to perform"). Accordingly, Plaintiff's breach of contract claims are DISMISSED WITH PREJUDICE.[10]

### v. Implied Covenant of Good Faith and Fair Dealing Claims

Plaintiff alleges that National City breached the implied covenant of good faith and fair dealing by (1) suspending Plaintiff's HELOC in the absence of any significant decline in the value of Plaintiff's home; (2) suspending Plaintiff's HELOC without first determining Plaintiff's present equity in his home; (3) requiring Plaintiff to pay upfront for an appraisal; and (4) failing to disclose certain information used in determining whether to suspend Plaintiff's HELOC.[11] (Compl. ¶¶ 65–67.)

---

10. These claims correspond to Count III, Claims 8, 9, and 10 on page 5 of this Order, *supra.*

11. Plaintiff's claim that National City breached the implied covenant of good faith and fair dealing by failing to disclose certain information used in determining whether to suspend

■ Under Ohio law, there is an implied covenant of good faith and fair dealing in almost every contract. *Littlejohn v. Parrish,* 163 Ohio App.3d 456, 839 N.E.2d 49, 53 (2005). "Good faith" refers to "an implied undertaking not to take opportunistic advantage in a way ... which therefore was not resolved explicitly by the parties." *Ed Schory & Sons, Inc. v. Soc'y Nat'l Bank,* 75 Ohio St.3d 433, 662 N.E.2d 1074, 1082–83 (1996). A party's decision to enforce the terms of a contract does not breach the implied covenant of good faith and fair dealing. *See id.* at 1082 ("Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of 'good faith.' ").

As discussed above, the Court has determined that the safe-harbor provision did not require National City to consider the present level of equity in Plaintiff's home. *See supra.* The Court has also determined that the use of an AVM to calculate the value of Plaintiff's home does not violate TILA or Regulation Z. *See supra.* Moreover, the Court has rejected Plaintiff's claim that National City violated TILA and Regulation Z by requiring Plaintiff to pay upfront for an appraisal. *See supra.* Thus, National City did not breach the implied covenant of good faith and fair dealing when it acted within its rights under the HELOC agreement. Accordingly, Plaintiff's claims for breach of the implied covenant of good and fair dealing are DISMISSED WITH PREJUDICE.[12]

### vi. Unjust Enrichment Claim

Plaintiff asserts an alternative claim for unjust enrichment. (Compl. ¶ 72.) Plaintiff contends that National City was unjustly enriched when it retained money that might otherwise have been lent to him pursuant to the HELOC agreement. (*Id.* ¶ 73.)

■ Under Ohio law, an unjust enrichment claim requires proof of the following three elements: (1) a benefit conferred by plaintiff upon defendant; (2) knowledge by defendant of the benefit; and (3) retention of the benefit by defendant where it would be unjust to retain the benefit without payment. *Wuliger v. Mnfrs. Life Ins. Co.,* 567 F.3d 787, 799 (6th Cir.2009) (*citing Hambleton v. R.G. Barry Corp.,* 12 Ohio St.3d 179, 465 N.E.2d 1298, 1302 (1984)). Generally, an unjust enrichment claim is unavailable where an express contract governs the same subject. *City of Cincinnati v. Cincinnati Reds,* 19 Ohio App.3d 227, 483 N.E.2d 1181, 1185 (1984).

Plaintiff avers that National City "has been unjustly enriched by retaining money that should otherwise have been lent to the borrowers as part of their HELOCs." (Compl. ¶ 73.) The HELOC agreement governs the relationship between Plaintiff and National City. (Compl. Ex. B, Equity Reserve Agreement—National Home Equity 1) ("You, the undersigned, are opening an Equity Reserve Line of Credit ... and agree that the following terms and conditions will apply to your Line."). Plaintiff cites an exception that allows an unjust enrichment claim to proceed despite the existence of a contract where there are allegations of fraud or bad faith. *See Palm Beach Co. v. Dun & Bradstreet, Inc.,* 106 Ohio App.3d 167, 665 N.E.2d 718, 723 (1995) ("[T]hat an express contract pre-

---

Plaintiff's HELOC appears to overlap with Plaintiff's abandoned claims regarding deficient notice. (Pl.'s Opp'n 4 n. 1.)

12. These claims correspond to Count IV, Claims 11, 12, 13, and 14 on pages 5 and 6 of this Order, *supra.*

cludes extracontractual [sic] relief ... is qualified by the proviso that there must be an absence of fraud or bad faith.").

*Palm Beach* is distinguishable from the instant case. In *Palm Beach,* the unjust enrichment arose from "fraud and bad faith arising from a pattern of activity which ha[d] little to do with the contract terms...." *Id.* at 722. Here, National City retained money pursuant to a clause in the HELOC agreement. (*See* Compl. Ex. B, Equity Reserve Agreement—National Home Equity 3) ("Bank can refuse to make additional extensions of credit or reduce your Line...."). The Court has determined that National City did not act in bad faith. *See supra.* Moreover, Plaintiff does not allege fraud. (See generally Compl.); *see also Jones v. Petland, Inc.,* No. 2:08–cv–1128, 2010 WL 536928, at *4 (S.D.Ohio Feb. 11, 2010) ("[N]aked allegations of bad faith and illegality do not suffice to withstand a motion to dismiss."). Accordingly, Plaintiff's unjust enrichment claim is DISMISSED WITH PREJUDICE.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS National City's motion to dismiss. Plaintiff's claims are DISMISSED WITH PREJUDICE in their entirety.