*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0468p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DARRYL WHITE,

    *Plaintiff-Appellant,*

        *v.*

DETROIT EDISON COMPANY, UTILITY WORKERS
UNION OF AMERICA AFL-CIO, and UTILITY
WORKERS UNION OF AMERICA LOCAL 223,
        *Defendants-Appellees.*

No. 06-1007

---

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 04-40260—Paul V. Gadola, District Judge.

Argued: November 30, 2006

Decided and Filed: December 22, 2006

Before: MARTIN, NORRIS, and GIBBONS, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Mark S. Demorest, LAW OFFICES OF MARK S. DEMOREST, Dearborn, Michigan, for Appellant. Richard J. Seryak, MILLER, CANFIELD, PADDOCK & STONE, Detroit, Michigan, Ellen F. Moss, KLIMIST, McKNIGHT, SALE, McCLOW & CANZANO, Southfield, Michigan, for Appellees. **ON BRIEF:** Mark S. Demorest, LAW OFFICES OF MARK S. DEMOREST, Dearborn, Michigan, for Appellant. Richard J. Seryak, Charles T. Oxender, MILLER, CANFIELD, PADDOCK & STONE, Detroit, Michigan, Ellen F. Moss, KLIMIST, McKNIGHT, SALE, McCLOW & CANZANO, Southfield, Michigan, for Appellees.

---

**OPINION**

---

    BOYCE F. MARTIN, JR., Circuit Judge. Plaintiff Darryl White, a former Detroit Edison employee and member of the utility workers' union at the Detroit Edison power plant in River Rouge, Michigan, appeals from the district court's grant of summary judgment in favor of Detroit Edison, his local union, and the union's national affiliate. White seeks to resuscitate his action against the local and national unions for their breach of the duty of fair representation, and against Detroit Edison for terminating him without cause in violation of the union's collective bargaining agreement. For the reasons discussed below, we **AFFIRM** the decision of the district court.

I

The following facts were stated by the district court:

Plaintiff Darryl White began employment with Defendant Detroit Edison in May 2001, as a pipefitter for Detroit Edison's River Rouge power plant. At this time, White became a member of the utility workers union, Defendant [Utility Workers Union of America] Local 223. As a member of the union, White's employment status was protected and governed by a collective bargaining agreement between Detroit Edison and Local 223. Pursuant to the agreement, during the first year of employment, an employee has probationary status. After one year, an employee can be discharged only for just cause.

On March 12, 2002, while still a probationary employee, White was disciplined for being away from his work area without permission on two occasions. White did not file a grievance in response to the discipline. White completed his probationary period with Detroit Edison in May 2002. On both June 1 and June 7, 2002, White left work early by approximately one half hour. On June 14, 2002, a fact-finding hearing was held concerning White's early absences from work in compliance with the collective bargaining agreement which requires a fact-finding hearing before issuance of serious discipline to a union employee. As a result of the hearing, Detroit Edison placed White on "decision-making" leave, which is paid leave where an employee is provided the opportunity to consider the future status of his or her employment with Detroit Edison. Decision-making leave is considered serious discipline and it puts an employee on notice that any subsequent inappropriate behavior may result in more severe discipline, including discharge from employment.

White challenged the discipline by filing a grievance. Pursuant to the collective bargaining agreement, a "third step hearing" was held on the grievance in September 2002. Third step hearings are in-house hearings conducted by employees of Detroit Edison. White was present at the hearing, had the opportunity to defend himself, and was represented by Local 223. On October 25, 2002, a ruling from the hearing was issued, upholding White's decision-making leave discipline. White alleges that he did not learn of the ruling until April 2003, which was too late to make an appeal.

Between the September 2002 third step hearing and April 2003, White had some difficulty with his supervisors. Two fact-finding hearings were conducted on separate incidents: in one case, a refusal by White to do work because of safety concerns; in another case, an accusation that White engaged in disruptive behavior during a briefing. Neither hearing resulted in White receiving any additional discipline. Also during this time, White had two counseling sessions for arguing with a supervisor and for failing to tell his supervisors where he could be reached. The counseling sessions were not considered discipline, nor did they result in any discipline.

The events that constitute the reason for White's eventual discharge from employment occurred on July 23 and 24, 2003. On July 23, White finished an assignment at approximately 5:00 p.m. White waited for another assignment until 7:00 or 7:30 p.m., and then went on his double shift lunch break. After his lunch, White continued to relax in the break room, waiting for another assignment. White testified that there were several other employees also present relaxing in the break room. White claims that he got up several times to look for his supervisor in order to receive another assignment, but that he was unable to locate him. White waited until 11:30 p.m. without working or receiving another assignment, punched out of work, and went home.

The following day, July 24, White began working on an assignment in the morning. Before White was done with his first job, his supervisor, Wallace Cash, assigned White to another job. From White's testimony, Cash told White of the second job at 10:30 or 10:45 a.m. White testified that he could not get to the second job immediately, because he was not finished with the first job. White testified that after lunch, at around 12:15 or 12:30 p.m., he went to check the status of his second job, and found that he could not begin because insulation was still being removed at the job site. White left the job site, and a co-worker subsequently began the job without White. White eventually did return to the job site and began work on this second job at around 2:00 p.m.

On July 29, 2003, a fact-finding hearing was held to consider the events of July 23 and 24, 2003. White was present at the hearing and was represented by Local 223. The ruling resulting from the fact-finding was that White was absent from his work location without permission for approximately 3½ hours on July 23 and approximately 2½ hours on July 24. Because this misconduct occurred while White was still on decision-making leave probation, Detroit Edison then made the decision to terminate White's employment. Detroit Edison discharged White in an official letter dated August 22, 2003.

White filed a grievance, and a third step hearing was held on October 27, 2003. White was again present at the hearing and represented by Local 223. On January 27, 2004, a ruling was issued upholding the termination of White's employment. White then asked Local 223 to take his case to arbitration. Local 223 reviewed White's request and decided against taking White's case to arbitration, notifying White of its decision on March 10, 2004.

White appealed Local 223's ruling to [the] National Union. On July 28, 2004, after providing both Local 223 and White an opportunity to submit additional information, [the] National Union decided to uphold Local 223's refusal to take White's case to arbitration.

*White v. Detroit Edison Co.*, 400 F. Supp. 2d 1020, 1022-23 (E.D. Mich. 2005).

White filed a complaint in federal district court against Detroit Edison, Local 223, and the national union, alleging violations of the Labor Management Relations Act, 29 U.S.C. § 185 *et seq*. White's complaint alleged: (1) that Detroit Edison breached the collective bargaining agreement by terminating his employment without just cause, and (2) that Local 223 and the national union breached their duties of fair representation by not submitting White's grievance to arbitration.[1] In response, the national union, Local 223, and Detroit Edison all filed motions for summary judgment. The district court ruled on all of the motions in an opinion dated November 15, 2005.

The district court denied Detroit Edison's motion, finding that when viewed in light most favorable to White, a genuine issue of material fact existed as to whether Detroit Edison had good cause to discharge White. The district court granted Local 223's motion, noting that under *Vaca v. Sipes*, 386 U.S. 171, 190 (1967), a "breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." The district court also granted the national union's motion, noting that White was similarly unable to point to any arbitrary action on its part. The court held: "National Union did not merely 'rubber stamp' Local 223's decision. Instead, National Union solicited from both Local 223 and White any additional information that would be helpful in considering White's

---

[1]White's complaint originally contained a third count, but this count was later withdrawn by White. 400 F. Supp. 2d at 1023.

appeal. . . . [T]here is nothing in the record to indicate that National Union did not consider all the evidence in White's case." 400 F. Supp. 2d at 1027.

On November 30, 2005, the district court issued a supplemental order to its November 15 opinion. The order noted that in cases involving inextricably intertwined—also known as "hybrid"—claims against both union and employer, a plaintiff must survive summary judgment on *both* claims in order to prevail. Thus, notwithstanding its November 15 judgment denying Detroit Edison's summary judgment motion, the district court concluded that because neither Local 223 nor the national union breached its duty of fair representation to White, his cause of action against Detroit Edison must necessarily fail as a matter of law.

II

This Court reviews a district court's grant of summary judgment *de novo*, and must view "the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the non-moving party." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1996)). Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(c)).

### A. Summary Judgment in Favor of Detroit Edison

This Court's precedent in *Roeder v. American Postal Workers Union*, 180 F.3d 733 (6th Cir. 1999), forecloses any argument that the district court erred in granting summary judgment for Detroit Edison in its supplemental order. In *Roeder*, the plaintiff brought a hybrid §301/duty-of-fair-representation claim similar to that brought by White. The plaintiff in *Roeder* claimed the United States Postal Service had terminated him in violation of the just-cause provisions of his union's collective bargaining agreement. *Id.* at 736. Because he was displeased with the outcome of the union's grievance process—in which his grievance was submitted to arbitration, where he lost—the plaintiff tacked on a complaint against his union for breach of the duty of fair representation. *Id.* at 736-37. This Court ruled:

> To prevail on his hybrid § 301/fair representation claim, Roeder must satisfy a two-prong test. First, Roeder must prove that, by terminating him on less than "just cause" grounds, the Postal Service breached the terms of its CBA with the Union. Second, Roeder must show that in representing him during the grievance process leading to arbitration, the Union breached its duty of fair representation owed to him. Liability cannot attach to the Postal Service or the Union unless **both** prongs of this test are satisfied.

*Id.* at 737 (emphasis added) (citing *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983)); *see also Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990) ("Because most collective-bargaining agreements accord finality to grievance or arbitration procedures established by the collective-bargaining agreement, an employee normally cannot bring a [LMRA] § 301 action against an employer unless he can show that the union breached its duty of fair representation in its handling of his grievance.").

The implications of *Roeder* for the instant case are unequivocal. If White's breach-of-the-duty-of-fair-representation claim against his union fails, so too must his wrongful termination claim against Detroit Edison. It may seem perverse that a wrongful termination claim adjudged worthy of jury review—as the district court here concluded on November 15, 2005—should be dismissed

simply because the union does not adjudge the claim worthy of arbitration. As Justice Black famously dissented in *Vaca*:

> Either the employee should be able to sue his employer for breach of contract after having attempted to exhaust his contractual remedies, or the union should have an absolute duty to exhaust contractual remedies [by following through with arbitration] on his behalf. The merits of an employee's grievance would thus be determined by either a jury or an arbitrator. Under today's decision it will never be determined by either.

386 U.S. at 208 (Black, J., dissenting). But Justice Black did not win the day, and lower courts must apply labor law as it currently stands, which—not improperly—subordinates certain rights of the individual for those of the collective union. In a sense, by joining the union, White consented to allow the union board to serve as a de facto jury in his wrongful discharge claim.

Thus, White's arguments as to the wrongfulness of his termination, however meritorious, simply are not availing if he cannot first show a breach of the union's duty of fair representation. That brings us to review of the breach-of-duty-of-fair-representation claim.

### B. Summary Judgment in Favor of the Unions

Other than *Vaca* (which would seem to cut against him), White cites in his brief to only one case in support of his argument, *Hines v. Anchor Motor Freight Inc.*, 424 U.S. 554 (1975). In *Hines*, as in *Roeder* and in contrast with this case, a final arbitral decision had been reached. The only issue for review was whether proof of breach of the duty of fair representation could remove the bar of arbitral finality and thus allow the plaintiff to proceed with his original contract claim against the employer. 424 U.S. at 561. In holding that such proof was sufficient, the Supreme Court merely affirmed the centrality of the breach-of-duty-of-fair-representation inquiry. It did not, as White suggests, revise or alter the *standard* by which such breach is to be evaluated. That standard, in a case such as this one where the union has declined to submit a grievance to arbitration, was clearly laid out almost thirty years ago in *Vaca*:

> A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. . . . Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration.

386 U.S. at 190-91. The *Vaca* standard was further clarified in *Airline Pilots Assoc., Int'l v. O'Neill*, 499 U.S. 65 (1991), in which the Supreme Court suggested that union determinations as to whether or not to proceed to arbitration be accorded a "wide range of reasonableness." *Id.* at 78 ("Any substantive examination of a union's performance . . . must be highly deferential.").

Applying this standard, White's claims must fail. Recall that in June of 2002, White's absences from work led to his being put on "decision-making leave," which is no more than a form of probation/notice that tells an employee he will likely be terminated if he is guilty of even one future instance of inappropriate behavior. In essence, by placing an employee on decision-making leave, Detroit Edison lays the groundwork for a proper just-cause dismissal. White appealed this determination, and Local 223 backed him through a series of hearings, but they were not successful. The determination was considered final as of October 2002, and the decision-making leave was to

last eighteen months.**2**  When White was accused of being absent from work again in July 2003, he was clearly still subject to the decision-making leave.  Local 223 represented White at a hearing in which he attempted to challenge those absences, but in the end, a fact-finding determined that he had been absent from his work location without permission for approximately six hours — 3½ hours on July 23 and 2½ hours on July 24.  After he was terminated, Local 223 again represented White at a third-step hearing to challenge his dismissal.

Evidently, Local 223 did not think that White's case was one it could win at arbitration.  Indeed, the President of Local 223, James C. Harrison, wrote a letter to the national union explaining the situation:  "In reviewing Mr. White's termination grievance, it was decided by the Executive Board [of Local 223] that given Mr. White's short employment tenure and discipline record, a favorable arbitration ruling would be extremely difficult."  The Local 223 executive board was not without its dissenters.  For example, a board member named Ed Czupich felt that White had been terminated without cause, and that his grievance was worthy of arbitration.  He made an internal motion to this effect with the Local 223 executive board, and the motion was seconded by board member Stan Kulik.  But the motion failed because a majority of board members disagreed with Czupich's opinion of the matter.

In the end, Czupich and Kulik may have been correct that White's grievance deserved arbitration, and a majority of the Local 223 board may have been wrong.  But that does not mean the majority acted arbitrarily or in bad faith, which is what would be required for a reversal under *Vaca*.  There is simply no evidence that Local 223 "arbitrarily ignore[d]" or handled in "perfunctory fashion" White's grievance.  *Vaca*, 386 U.S. at 191.  The same is true for the decision of the national union, which considered the local's decision along with substantial supporting documentation.

### III

In his brief, White relies on the district court's initial decision that there existed a "genuine issue of material fact" regarding his just-cause claim against his employer, Detroit Edison.  Such reliance is misplaced, because in light of *Roeder* this Court must also inquire whether there is a genuine issue of material fact pointing to arbitrariness or bad faith on the part of Local 223 in handling White's claim.  Because White cannot show *this* genuine issue of material fact, we conclude that the district court's grants of summary judgment in favor of defendants were proper, and thus we **AFFIRM**.

---

**2**The terminology is somewhat confusing, but the "leave" portion of decision-making leave only lasts one day.  As Detroit Edison's written policies make clear: "When a Decision-Making Leave is issued, the employee is directed to take the following workday off, with pay, to decide if a commitment to overall satisfactory performance can be made."  Joint App'x. at 586.  It is the "probationary" aspect of the decision-making leave which lasts eighteen months.