*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0010p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

MARY MARTINEZ,

  *Plaintiff-Appellant,*

    *v.*

CRACKER BARREL OLD COUNTRY STORE,
INC.,

  *Defendant-Appellee.*

No. 11-2189

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cv-13271—Avern Cohn, District Judge.

Argued: October 11, 2012

Decided and Filed:  January 10, 2013

Before:  SUTTON and GRIFFIN, Circuit Judges; and WELLS, District Judge.[*]

─────────────────

**COUNSEL**

**ARGUED:** Travis I. Dafoe, GAFKAY & GARDNER, PLC, Frankenmuth, Michigan, for Appellant.  Ernest R. Bazzana, PLUNKETT COONEY, Detroit, Michigan, for Appellee.  **ON BRIEF:** Travis I. Dafoe, Julie A. Gafkay, GAFKAY & GARDNER, PLC, Frankenmuth, Michigan, for Appellant.  Ernest R. Bazzana, PLUNKETT COONEY, Detroit, Michigan, for Appellee.

─────────────────

**OPINION**

─────────────────

  WELLS, District Judge.  Mary Martinez appeals the district court's grant of summary judgment in favor of her employer, defendant Cracker Barrel Old Country Store ("Cracker Barrel"), on Ms. Martinez's claims of  "reverse" racial discrimination,

───────────────

  [*]The Honorable Lesley Wells, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

1

filed pursuant to 42 U.S.C. § 1981 and the Michigan Elliot-Larsen Civil Rights Act (ELCRA), MCL § 37.2101 *et seq*, arising out of Cracker Barrel's termination of Ms. Martinez from her position as retail manager of its Flint, Michigan store. Finding Ms. Martinez has failed to establish her *prima facie* case, we affirm the grant of summary judgment.

I.

Ms. Martinez worked for Cracker Barrel from 1995 until 1999 when she voluntarily separated from the company. She was rehired in 2000 as retail manager at the Cracker Barrel in Flint, Michigan, a position she held until her termination in February 2010. The parties do not dispute that Ms. Martinez was qualified for her position as retail manager, which involved having a hand in the hiring of retail workers and cashiers, supervising those hired, and managing the retail shop in accord with Cracker Barrel's policies.

The parties also do not dispute that Ms. Martinez acknowledged receiving training on Cracker Barrel's policies prohibiting discrimination in the workplace, on rules requiring notification of any observed discriminatory actions, and on types of terms, such as the expression "ghetto," that signify racial animus.

The evidence indicates that on January 25, 2010, Ms. Martinez engaged in a wide-ranging, and by some accounts, heated series of conversations with four Cracker Barrel employees. At different times, the conversations touched on the Haiti earthquake, the plight of those in Haiti, and the use of the Michigan "Bridge Card," (a state public assistance program used by several Cracker Barrel employees). An associate manager overheard the conversations and filed a formal complaint to General Manager Don Longest on January 28, 2010, recounting the conversation regarding Haiti and alleging Ms. Martinez made inappropriate racial comments. Ms. Martinez does not dispute the conversations but notes that she alone was singled out while all four employees participated in the discussion.

Mr. Longest filed an incident report describing the event that came to the attention of District Manager Joanne Morris and Employee Relations Specialist Tonyia Jones on February 1, 2010. These managers, all Caucasian, opened an investigation into Ms. Martinez's conduct, interviewing Ms. Martinez, along with several employees at the Flint, Michigan Cracker Barrel. Through the course of this investigation, Cracker Barrel encountered employee allegations concerning a series of inappropriate racial comments and conduct by Ms. Martinez, including referring to the Michigan Bridge Card as a "ghetto card," sharing her personal feelings about teen pregnancy, and refusing to hand out paychecks to employees because she was upset about their reliance on the Bridge Cards. Ms. Martinez admitted using the term "ghetto Bridge Card," occasionally entering into conversations with employees about their lives, and correcting the language of employees.

As part of the investigation, Ms. Morris and Restaurant District Manager Nick Beedie interviewed Ms. Martinez at the Flint, Michigan store. Ms. Martinez alleges that when she asked whether she was going to be fired, Mr. Beedie responded: "[W]e'll both go to bat for you, but you have to remember that this is Flint and you know the history of this store." Ms. Martinez admits that she did not ask Mr. Beedie what he was referring to but speculates in her deposition that the comment was in reference to a previous incident when a Caucasian manager at the store called the police after African-American guests told her they did not intend to pay for their meals. The guests' complaint allegedly resulted in the manager's termination.

It became apparent to Ms. Jones, during the course of the investigation, that other retail employees, not managers, used inappropriate racial terms such as "ghetto card." In response, Cracker Barrel imposed policy reviews on those employees, all African-American. Ms. Jones noted that from a company human-resources perspective, managers were held to a higher standard due to their positions of leadership.

Upon completion of the investigation, Cracker Barrel determined that Ms. Martinez had violated specific company rules, which would result in her termination. Ms. Martinez elected to be terminated over the phone and, on February 12, 2010, Ms.

Morris read to her the "Employee Counseling Report" detailing her transgressions on January 25, 2010 as violating company rules prohibiting rude and boisterous conduct, or any form of discriminatory or harassing behavior.

Ms. Martinez brought her lawsuit on August 18, 2010, alleging racial discrimination in the handling of her termination. On March 4, 2011, Cracker Barrel made an offer of reinstatement to Ms. Martinez. Cracker Barrel interpreted her response letter from counsel as a rejection of its offer.

## II.

This Court "reviews a grant of summary judgment de novo and considers the facts and any inferences drawn from the facts in the light most favorable to the non-moving party." *Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (en banc ) (citing *White v. Detroit Edison Co.*, 472 F.3d 420, 424 (6th Cir. 2006)). "Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving parties are entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(a)). "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) & (c). The burden to show that there are no genuine issues of material fact falls upon the defendants as the parties seeking summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court considers the evidence presented in the light most favorable to Martinez and draws all justifiable inferences in her favor. *See id.* The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of a particular legal

claim to the jury or whether the evidence on the claim is so one-sided that the defendant should prevail as a matter of law. *See id*. at 251–52.

III.

Ms. Martinez charges Cracker Barrel with reverse racial discrimination pursuant to 42 U.S.C. § 1981. Most, but significantly not all, of the application of Michigan's Elliot-Larsen Civil Rights Act (ELCRA) parallels the federal law framework enunciated in Title VII "reverse discrimination" cases. *See McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973); *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003).

Under the ELCRA, plaintiffs have two alternative ways to show reverse discrimination: through direct evidence or through circumstantial evidence. "Direct evidence is evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Thompson v. City of Lansing*, 410 F. App'x 922, 929 (6th Cir. 2011). "Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003).

To establish a *prima facie* case of discrimination predicated upon circumstantial evidence, a plaintiff must prove, by a preponderance of the evidence, that: (1) he or she is a member of a protected class; (2) he or she is qualified for the position; (3) he or she suffered an adverse employment action; and (4) the circumstances indicate that race or sex played a role in the adverse employment action. *See McDonnell Douglas Corp.*, 411 U.S. at 802; *Braithwaite v. Timken Co*., 258 F.3d 488, 493 (6th Cir. 2001).

In our circuit, to satisfy the first element in a case such as this, where a member of a racial majority is claiming discrimination in violation of federal law, the plaintiff must typically "demonstrate background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Zambetti*

*v. Cuyahoga Cmty. College*, 314 F.3d 249, 255 (6th Cir.2002).  However, because Ms. Martinez also brings some of her claims alleging race discrimination under Michigan's ELCRA, she need not satisfy this heightened standard of proof with respect to those claims.  *Lind v. City of Battle Creek*, 470 Mich. 230, 681 N.W.2d 334 (2004) (holding that under Michigan's statute, a reverse discrimination claim does not require a showing of "background circumstances supporting the suspicion that the defendant is that unusual employer who discriminates against the majority").  Thus, for purposes of analysis under the ELCRA, Ms. Martinez makes a *prima facie* showing if she demonstrates that she was qualified for the position, suffered an adverse action, and was treated differently than a similarly situated non-Caucasian.  *Zambetti*, 314 F.3d at 255; *Murray v. Thistledown Racing Club, Inc*., 770 F.2d 63, 67 (6th Cir. 1985).

After a plaintiff has established a *prima facie* case of reverse discrimination, the burden shifts to the defendant "to offer a legitimate, non-discriminatory reason for the adverse employment action at issue." *Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004).  If the defendant successfully articulates a legitimate, nondiscriminatory reason for the adverse employment action, the burden returns to the plaintiff to show that the reason proffered for the adverse employment action is pretext for what is, in essence, unlawful discrimination.  *See McDonnell Douglas*, 411 U.S. at 804; *Braithwaite*, 258 F.3d at 493.  The plaintiff  "can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co*., 231 F.3d 1016, 1021 (6th Cir. 2000).  This circuit  has adopted an approach that requires an employer, to avoid a finding that its claimed nondiscriminatory reason was pretextual, "to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Smith v. Chrysler Corp*., 155 F.3d 799, 806-07 (6th Cir. 1998).  Pursuant to *Smith*, the "key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id*. at 807.

IV.

Ms. Martinez points to two statements made by Cracker Barrel managers as direct evidence of Cracker Barrel's discriminatory intent.  The first statement occurred during a deposition in which Ms. Martinez's counsel asked Ms. Morris the following: "So you mean, you would agree [based on] the information you have, race was an issue in the discharge."  Ms. Morris answered, "Yes."  At the time, Cracker Barrel's counsel raised an objection to the form of the question as ambiguous.  Subsequent to the deposition, Ms. Morris submitted a clarifying affidavit, stating:

> To the extent that Plaintiff's counsel interprets my statements as indicating that Plaintiff was discharged because of her race, this is an inaccurate interpretation of my testimony.  Instead, I believe that racially-charged comments by Plaintiff may have led to her discharge.

(Cracker Barrel's Exhibit X.P.2).

In the second statement, Ms. Martinez recounts a comment made by Mr. Beedie when he and Ms. Morris interviewed Ms. Martinez during the course of the Company's investigation.  When Ms. Martinez asked if she was going to be discharged, Mr. Beedie allegedly remarked, "We'll both [Ms. Morris and I] go to bat for you, but you have to remember that this is Flint and you know the history of this store." (Cracker Barrel's Exhibit G. p. 84).  Ms. Martinez maintains this statement references an incident in which a female Caucasian manager was fired after African-American guests complained about their treatment.  The record indicates that Mr. Beedie was never asked to explain his statement during the interview with Ms. Martinez.

Direct evidence explains itself.  As this Circuit has noted, such evidence does not require the fact finder to draw any inferences to reach the conclusion that unlawful discrimination was at least a motivating factor.  *See Rowan v. Lockheed Martin Energy Sys., Inc.,* 360 F.3d 544, 548 (6th Cir. 2004) ("Direct evidence is evidence that proves the existence of a fact without requiring any inferences.").

In this instance, neither statement amounts to direct evidence.  The deposition statement by Ms. Morris, considering the indeterminate context and her clarifying

affidavit, cannot reasonably be construed to mean that Ms. Martinez's race was the reason for her termination.  Further, the poorly phrased question requires the kind of inferential speculation as to the proper subject of the phrase "race was an issue in the discharge" that fails to come within the ambit of direct evidence.  Similarly, the second statement, made by Mr. Beedie regarding Flint and the history of the store, requires the listener to infer its meaning.

V.

Reviewing under the terms required for consideration of circumstantial evidence, neither party disputes Ms. Martinez's qualifications for her position at Cracker Barrel, nor that she experienced an adverse action, "a materially adverse change in the terms and conditions of employment."  *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004).  We are left, then, to examine the remaining element of her *prima facie* case: whether Ms. Martinez was treated differently than similarly-situated employees who were outside the protected Caucasian class.

Ms. Martinez contends that African-American assistant manager Tara Guidry was similarly-situated and yet received more favorable treatment.  Ms. Martinez alleges that Ms. Guidry's complaints about general manager Brian Montclam were taken more seriously than were her complaints, and Ms. Martinez asserts that Ms. Guidry was not disciplined for using the term "ghetto card."

In establishing that two people are similarly-situated, a "plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (internal quotation marks omitted). *Accord Wright v. Murray Guard, Inc.,* 455 F.3d 702, 709–10 (6th Cir. 2006).  Instead, "the plaintiff [must] demonstrate that he or she is similarly situated to the [claimed comparator] in all relevant respects."  *Wright*, 455 F.3d at 710 (quoting *Ercegovich*, 154 F.3d at 353).  In the disciplinary context, the Sixth Circuit has held that to be found similarly situated, "the plaintiff and [her] proposed comparator must have engaged in acts of 'comparable seriousness.'" *Id.*  (quoting *Clayton v. Meijer, Inc.,* 281 F.3d 605, 611 (6th Cir. 2002)); *see also Macy v. Hopkins Cnty. Sch. Bd. of*

*Educ.*, 484 F.3d 357, 370 (6th Cir. 2007) *abrogated on other grounds by Lewis v. Humboldt Acquisition Grp.*, 681 F.3d 312 (6th Cir. 2012) (en banc) (explaining that where "incidents of misconduct giving rise to discipline form the crux of the similarities" between employees, "the degree of their misconduct is a factor to be given great weight"). To make this assessment, a court must look "to certain factors, such as whether the individuals 'have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Wright*, 455 F.3d at 710 (quoting *Ercegovich*, 154 F.3d at 352).

The evidence indicates that neither of Ms. Martinez's assertions provides the necessary threshold for establishing that Ms. Guidry was a reasonable comparator treated more favorably than Ms. Martinez. Taking Ms. Martinez's allegations as true, Ms. Guidry was nevertheless differently situated in the management structure of the store, and Ms. Martinez's conduct was admittedly more pervasive and severe than merely uttering the term "ghetto card." Both of these uncontested findings mitigate against considering Ms. Guidry as similarly situated to Ms. Martinez.

As to Ms. Martinez's first assertion, there is no inference of a discriminatory animus involving preferred treatment by Cracker Barrel of a complaint from Ms. Guidry. Regarding Ms. Martinez's second assertion, that Ms. Guidry used the term "ghetto card," the evidence is conflicting. Ms. Martinez asserts she heard Ms. Guidry use the term, Ms. Guidry denies using the phrase, and the Company investigation concluded that Ms. Guidry's use of the term was "unsubstantiated." Assuming that Ms. Guidry did use the offending term, the degree of misconduct is sufficiently dissimilar to remove Ms. Guidry from consideration as a *bona fide* comparator for purposes of establishing the *prima facie* case. *See Macy*, 484 F.3d at 370. Moreover, Ms. Martinez's role as a manager at Cracker Barrel could reasonably justify holding her to a more stringent standard of conduct than that applied to Ms. Guidry, who holds the position of assistant manager.

As Ms. Martinez did not establish a *prima facie* case of discrimination, this Court need not reach the further questions of pretext involved in the *McDonnell Douglas* balancing framework.

VI.

For the foregoing reasons, we affirm.