NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0179n.06

No. 13-5809

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 06, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| Willie Wright, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Memphis Light, Gas & Water Division, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Defendant-Appellee. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |

BEFORE: ROGERS, McKEAGUE, and WHITE, Circuit Judges.

ROGERS, Circuit Judge.  Willie Wright, who suffers from a speech impediment, sued Memphis Light, Gas & Water Division (MLGW), his employer, under the Americans with Disabilities Act (ADA) for alleged disability discrimination when Wright sought, but was not chosen for, the position of Customer Service Tech III.  Wright now appeals the district court's grant of summary judgment in favor of MLGW.  Because Wright failed to show that MLGW's legitimate reasons for denying Wright's promotion to Tech III—including three certification ride failures with different evaluators—were a pretext for discrimination, the district court did not err in granting summary judgment in favor of MLGW.

Wright is 60 years old and has spoken with a stutter his entire life.  Wright's stuttering impairment substantially limits his ability to speak and communicate effectively.  Wright's

stutter occurs when he gets "nervous around people," and he had not been diagnosed with any speech impediment prior to filing suit against MLGW. On August 7, 2012, a specialist diagnosed Wright and determined that his stuttering falls in the uppermost level of the moderate range of severity. Wright does not have any learning disabilities, learned to read at a normal age, performed well in school, and attended Jackson State University.

Wright has been employed by MLGW since October 17, 1985. On his initial application for employment, Wright indicated that he had no handicap or disability, because he did not know that stuttering was a disability. Between 1990 and 1998, Wright was rejected by MLGW for sixteen job promotions, but he did receive a promotion to the position of Water Treatment Operator, which was his job prior to the events at issue in this case.

MLGW has a position titled Customer Service Tech III, which involves investigating customer complaints concerning electric, gas, and water services, appliances or heating equipment malfunctions and making repairs and adjustments. Duties of the job include (1) inspecting electric, gas, and water services, appliances, and equipment for any type of malfunctions, (2) troubleshooting leaks and any malfunctions, (3) advising customers of needed repairs or to discontinue service, (4) investigating hazardous conditions such as downed lines or major gas leaks, (5) responding to calls for problems including fires, explosions, and gas leaks, and (6) changing gas meters and regulators when there is a malfunction that interrupts service. Before starting in this position, candidates must complete MLGW's customer service training program. In order to be eligible for the training program, candidates must possess a certain level of seniority within the company, successfully complete prerequisite courses in gas and

electricity, pass the "Customer Contact Test," and interview with MLGW human resources and an area supervisor. Wright satisfied all of these requirements and was selected for the training program. During his interview, which lasted nearly two hours, Wright stuttered, but he was not asked any questions about his stutter and did not mention that he was disabled or request any accommodation for his disability if selected for the trainee program.

MLGW's customer service training program lasts sixth months and entails classroom instruction and field training, leading up to certification to become a permanent Tech III. Employees selected for this training program are provided a two-week period to ride with a certified Tech III to observe the job duties firsthand before deciding whether to leave their current position and join the training program. Wright did not complete the two-week ride along, and the parties dispute whether he ever participated in a ride along. On or about April 5, 2009, Wright fell off his porch and fractured a bone in his left foot, forcing him to miss 10–12 weeks of Tech III training class. Nevertheless, Wright worked to catch up with the class, sought out extra assistance from his instructor, passed all ten written examinations, and completed his coursework with a ninety percent or above average grade, ranking at the top of his class. Wright believes that his classmates and his instructors treated him fairly. Yet Wright alleged that he was treated less favorably than his four non-disabled classmates and that his classroom instructor, Shelby Glore, said that his "speech could hold [him] back."

After graduating from the classroom, Tech III trainees have a 90-day probationary period during which they must "certify" into the position, which requires passing a final certification ride with an evaluator and demonstrating that they can perform the basic essential functions of

the position without assistance. Wright failed three separate attempts at certification, with three different instructors on three different dates. Shelby Glore, Wright's classroom instructor, failed Wright during his first certification ride. Glore's report of the certification ride indicated that Wright satisfactorily completed each task related to speech throughout the certification ride and showed basic skills needed for electrical calls, but did not show basic skills in handling gas calls, specifically in the area of venting, ventilation, and combustion of gas appliances. Wright also failed to notice vent pipes touching combustible material, and improper installation of diverters on top of gas appliances.

Wright and his union filed grievances with MLGW management pursuant to an agreement between Wright's union, the International Brotherhood of Electrical Workers (IBEW), and MLGW. Following the grievance, MLGW permitted Wright to take an additional 30 days of classroom training and receive a final evaluation ride 30 days thereafter. During his second certification attempt, with evaluator Donald Cupples, Wright had difficulty reading a map book and driving to calls, and did not use proper procedure on an electric call. At the time of the certification ride, Cupples was not aware that Wright had any disability. Cupples concluded that Wright did not demonstrate the basic functions of a Tech III and should not be certified. The deficiencies cited by Cupples were not related to Wright's speech, and Wright testified that Cupples did not say anything that would have given him any indication that he had a personal bias or prejudice against him.

Soon thereafter, Wright filed two grievances alleging that Customer Service Department Supervisor Lamar Lusk and his staff had conspired to keep Wright from being certified as a Tech

III.  After a full hearing, MLGW gave Wright a third opportunity to be certified, with evaluator Milton Bluitt.  Wright was again graded as satisfactorily completing each task related to speech during the ride, but he made the mistake of turning on space heaters at a residence when responding to a reported gas leak.  Bluitt did not certify Wright because he "didn't follow proper process or procedures.  He wasn't able to identify or locate the gas leak.  He didn't — he wasn't able to properly understand the use of his equipment when he was using it."  Wright offered no evidence to suggest that Bluitt's decision not to certify him had anything to do with his speech impediment.  Wright next filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), in which he alleged discrimination on the basis of his age and disability; however, the EEOC found no evidence of age or disability discrimination.

Wright filed suit against MLGW, alleging that MLGW denied him the position of Tech III because of his disability, and that MLGW acted, and continues to act, with malice or reckless indifference to Wright's federally protected rights, entitling Wright to punitive damages.  Wright also sought damages for lost wages and benefits, as well as humiliation, embarrassment, and emotional distress, and attorney's fees.

The district court granted summary judgment in favor of MLGW on Wright's ADA claim.[1]  The court analyzed the two contested elements of Wright's *prima facie* case of employment discrimination on the basis of disability, holding that Wright satisfied his burden on both elements.  The court, however, determined that MLGW adequately showed a legitimate,

---

[1]  The district court also granted summary judgment as to Wright's age discrimination claims, which are not a subject of this appeal.

nondiscriminatory reason for not certifying Wright as a Tech III, namely, that the three independent evaluators noted specific deficiencies in Wright's ability to handle certain Tech III tasks, including gas-related tests and repairs. The court concluded that Wright failed to establish that MLGW's reasons for denying Wright the promotion to Tech III were a pretext for discrimination and that he cited no evidence to prove pretext. The district court acknowledged Wright's evidence of MLGW's "seemingly minor deviations" from its training policies and procedures, reasoning that such evidence was simply not enough to prove pretext and show that Wright's speech was the true reason for MLGW's decision to deny him the Tech III certification. The district court also rejected Wright's attempt to show that similarly situated employees received disparate treatment for the same conduct, holding that the two non-protected comparator trainees were not similarly situated Tech III trainees who received more favorable treatment, because one trainee never passed certification and the other trainee passed only when evaluated by a different supervisor.

Even if Wright could succeed in establishing a *prima facie* case of employment discrimination on the basis of disability, he failed to meet his burden on pretext. Therefore, the district court was correct in granting summary judgment to MLGW on Wright's disability discrimination claim. We review *de novo* a district court's grant of summary judgment. *Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012).

First, Wright failed to adduce direct evidence of disability discrimination. Title 1 of the ADA provides, in relevant part, that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job

application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Wright argues that two comments from his superiors constituted direct evidence of unlawful disability discrimination; yet neither satisfies this standard. Lamar Lusk, Customer Service Assistant Manager, allegedly told Wright during a union grievance hearing that the "customer service [department] was going to be a better place" when Wright was gone. Appellant's Br. at 4, 15; Appellant's Rep. Br. at 6. In addition, Wright's classroom instructor and certification evaluator, Shelby Glore, allegedly told Wright that he was proud of Wright's accomplishments in the classroom, but that there was "just one problem that's going to hold you back, and that's your speech." "Direct evidence is evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013) (quoting *Thompson v. City of Lansing*, 410 F.App'x 922, 929 (6th Cir.2011)). Neither Lusk's nor Glore's statement requires this conclusion, thus they do not constitute direct evidence. Nothing in the record suggests that Wright's three certification evaluators knew about, much less were motivated by, Lusk's comment, nor is there any indication that Lusk was directly or indirectly involved in Wright's field certification attempts. It is also unclear whether Lusk's comment was even related to Wright's disability.

With respect to Glore's comment, Wright committed several task-oriented mistakes on his certification ride with Glore, and Glore was only one of three evaluators who had the authority and opportunity to certify Wright as a Tech III. In *Hedrick v. W. Reserve Care Sys.*,

this court held that evidence of an employer who "expressed concern" about the possibility that an employee's medical condition may prevent her from being able to perform her job is insufficient to support denial of summary judgment. 355 F.3d 444, 453 (6th Cir. 2004). There, the court reasoned that the plaintiff "tendered no series of comments or reports which would indicate [the employer's] discriminatory animus, and thus, [the interviewer's comment] may properly be characterized as isolated and insufficient to create a genuine issue of material fact regarding [the employer's] discriminatory intent." *Id.* at 454. Like the statement in *Hedrick*, Glore's comment to Wright was "clearly an expression of concern for [his] ability to perform the jobs' requirements." *See id.* at 455. Accordingly, the district court correctly concluded that Wright did not tender any direct evidence in support of his ADA claim against MLGW. Under the ADA, a plaintiff may prove disability discrimination either through direct and indirect evidence, but need not prove both. *Id.* at 452–53.

Even assuming that Wright is disabled and that he was otherwise qualified for the Tech III position, and thus could present a prima facie case using indirect evidence, MLGW demonstrated legitimate non-discriminatory reasons for denying him Tech III certification. The three evaluators' reports of Wright's three Tech III certification rides list specific errors and deficiencies in Wright's ability to perform certain Tech III tasks, including gas-related tests and repairs. During his certification rides, Wright had difficulty reading a map book and driving to calls, failed to use proper procedure when responding to a gas leak, a carbon monoxide call, and an electric call, failed to notice vent pipes touching combustible material, mistakenly turned space heaters on when responding to a gas leak, failed to identify or locate a gas leak, and failed

to understand the use of his equipment when he was using it. Wright admits that he made the mistakes observed by his evaluators and states in his brief that the "only issue on appeal is whether Mr. Wright put forward enough evidence of pretext to survive summary judgment."

Finally, the indirect evidence of disability discrimination in this case fails to meet Wright's burden of showing pretext. In the Sixth Circuit, "a plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Sitting en banc, this court recently held that the ADA bars discrimination "because of" an employee's age or disability, meaning that it prohibits discrimination that is a "but-for" cause of the employer's adverse decision. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012). Wright argues that MLGW's reasons did not actually motivate the decision not to certify him as a Tech III and were insufficient to warrant that decision. However, to show pretext, a plaintiff must "produce sufficient evidence from which a jury could reasonably reject [the defendant's] explanation of why it [took the adverse employment action]." *Chen*, 580 F.3d at 400. Wright has not produced such evidence.

Wright failed to demonstrate that the proffered reasons did not actually motivate, or were insufficient to motivate, the three evaluators' decisions not to certify him. For each certification ride, the evaluator was the lone and ultimate decision maker as to whether he would certify Wright as a Tech III. Moreover, mistakes such as failure to work a gas leak properly according to procedure are typical reasons for not certifying Tech III trainees, as is illustrated by the fact

that one of Wright's evaluators, Mr. Cupples, did not certify another trainee for that same reason. Wright argues that the two comments made by Glore and Lusk, "nitpicky" evaluators, and minor deviations from MLGW's training policy and procedures, show that there was a "sustained and coordinated effort" to prevent his promotion. Wright also asserts that the three certification rides were not independent and were not valid, yet he does not provide evidence to support this argument and could only articulate that "everything leads back to Shelby Glore," and the alleged bias "was going from the statement that Shelby Glore made." Notably, Wright himself selected Bluitt to be his third evaluator. In short, the "key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Martinez*, 703 F.3d at 915 (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806–07 (6th Cir.1998)). The evidence shows that MLGW made a reasonably informed and considered decision, and thus Wright failed to show that the reasons proffered were a pretext for unlawful discrimination.

Moreover, Wright sought to show pretext by arguing that similarly-situated non-disabled comparators received more favorable treatment than he did, but he failed to identify a non-disabled comparator similarly situated in all relevant respects. In a three-sentence paragraph in his brief, Wright argues on appeal only that Brenda Flowers, an employee who passed a certification ride after several failures and Wright "had the same instructor, who testified that Mr. Wright performed far superior, and followed the same grievance procedures." Appellant's Br. at 25. This perfunctory argument is not sufficient to demonstrate error on the district court's part in determining that a jury could not find that Flowers was a similarly situated comparator.

To survive summary judgment, "[the employee] was required to provide not only evidence from which the finder of fact could conclude that [the employer's] proffered reason is false, but also evidence from which the fact finder could conclude that [the employer's] action was intentionally discriminatory." *Smith v. Allstate Ins. Co.*, 195 F. App'x. 389, 395 (6th Cir. 2006) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993)). A paucity of information exists to indicate that Wright's three certification evaluators intended to discriminate against him based on his speech impediment. Wright cannot show that "but for" his disability, he would have been promoted. *See Lewis*, 681 F.3d at 321. Accordingly, we affirm the district court's grant of summary judgment.